**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| JAMILA SWIFT, et al.,               )<br>                                                    )<br>     Plaintiffs,                           )<br>                                                    )  CAUSE NO.: 2:11-CV-401-TLS<br>     v.                                         )<br>                                                    )<br>DIRECT BUY, INC., et al.,           )<br>                                                    )<br>     Defendants.                         ) | |
| JANICE HARRIS, et al.,              )<br>                                                    )<br>     Plaintiffs,                           )<br>                                                    )  CAUSE NO.: 2:11-CV-415-TLS<br>     v.                                         )<br>                                                    )<br>DIRECTBUY, INC., et al.,           )<br>                                                    )<br>     Defendants.                         ) | |
| BRIAN VANCE, et al.,                )<br>                                                    )<br>     Plaintiffs,                           )<br>                                                    )  CAUSE NO.: 2:11-CV-417-TLS<br>     v.                                         )<br>                                                    )<br>DIRECTBUY, INC., et al.,           )<br>                                                    )<br>     Defendants.                         ) | |
| PHIL GANEZER, et al.,               )<br>                                                    )<br>     Plaintiffs,                           )<br>                                                    )  CAUSE NO.: 2:12-CV-45-TLS<br>     v.                                         )<br>                                                    )<br>DIRECTBUY, INC., et al.,           )<br>                                                    )<br>     Defendants.                         ) | |

## OPINION AND ORDER

This matter is before the Court on the Plaintiffs' Motion for Final Approval of Class Action Settlement Agreement as well as related matters [ECF No. 171]. Forty-two Plaintiffs, individually and on behalf of the class that was stipulated for purposes of settlement, and Defendants DirectBuy, Inc. and related entities, entered the Settlement Agreement to resolve four class action lawsuits that had been transferred here and consolidated. For simplicity sake, I will refer to all of the defendants collectively as simply DirectBuy. One additional lawsuit, *Wilson v. DirectBuy, Inc.*, 2:11-cv-416-TLS-PRC, was not consolidated because the plaintiffs in that case are unwilling to join the Settlement, and are continuing to prosecute their claims separately.[1]

## BACKGROUND

DirectBuy is a franchisor of a national network of buying clubs. A consumer may only purchase products from DirectBuy after buying a membership, which can be renewed annually. The club offers products directly from manufacturers and their authorized suppliers, purportedly without a retail markup.

Beginning in 2008, the Plaintiffs initiated several actions alleging that DirectBuy violates various laws through their marketing materials and sales practices. According to the complaints, DirectBuy fails to disclose material information to prospective club members regarding the true prices for its products, including the fact that DirectBuy receives payments from vendors, manufacturers, and suppliers and does not pass these savings along to consumers. The Plaintiffs

---

[1] To the extent not otherwise noted, capitalized terms have the definitions assigned in the Settlement Agreement [ECF No. 137-1].

also complain about the addition of shipping and handling fees to the manufacturers' price. Put simply, the Plaintiffs believe that they did not enjoy savings that were commensurate with their membership fees or DirectBuy's representations.

In December 2010, the Plaintiffs in the *Wilson* case reached a settlement with the Defendants, which they submitted for approval to the United States District Court in the District of Connecticut. The court rejected that settlement. *Wilson v. DirectBuy, Inc.*, No. 3:09–CV–590 (JCH), 2011 WL 2050537 (D. Conn. May 16, 2011). At the Defendants' request, the District of Connecticut then transferred the case to this Court. *See Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510 (D. Conn. 2011). Four other related cases were also transferred and consolidated.

The parties held in-person mediation sessions on June 11–12, 2012, and August 22, 2012, before a neutral mediator, the Honorable Richard Neville (Ret.) of JAMS, and conducted numerous telephone conferences with Judge Neville and directly with each other in negotiating the resolution of this dispute. On February 8, 2013, the Plaintiffs in four of the cases and DirectBuy presented the Court with a Settlement Agreement, and asked the Court to preliminarily approve the Settlement, certify a proposed Class for settlement purposes, approve the form and manner of giving notice of the Settlement to the proposed Class, and set a hearing date for the final approval of the Settlement and the award to Class Counsel of attorneys' fees, costs, and expenses, and of incentive awards to the Plaintiffs.

On March 22, 2013, Judge Springmann preliminarily certified the Class and approved the Settlement Agreement, and the case was subsequently transferred to me. The Settlement required DirectBuy to pay $1.9 million into a settlement fund. After a reduction of no more than $900,000 for attorneys' fees, the settlement funds would be distributed to the Class Members—made up of

Current DirectBuy Members and Former DirectBuy Members who submitted timely and valid claim forms. The Current DirectBuy Members would have the option of choosing a $10 discount off any online order of at least $20 from DirectBuy's website instead of receiving the cash distribution. Additionally, DirectBuy agreed not to collect any charges and unpaid late fees that Defaulted DirectBuy Members had incurred as a result of failing to make payments to Defendant Beta Finance Company. The Defendants agreed to pay the notice and administration expenses associated with the Settlement. Pursuant to Federal Rule of Civil Procedure 23(g), the Court preliminarily appointed the law firms of Cohen & Malad, LLP, and Brager, Eagel & Squire, P.C., as counsel for the Class. The Court approved Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator.

On April 10, 2013, DirectBuy transferred $1.9 million to an escrow account established by Epiq. Additionally, Epiq provided all the notices that were required under the Preliminary Approval Order to the Class Members, the United States Attorney General, and state officials.

Seventeen class members filed submissions with the Court that could be considered objections. Many of the objectors complain that the settlement amount is too low or that the attorneys' fees are too high. A common alternative suggested by these objectors is that they receive a full refund of their several thousand dollar membership fee. Others complain that they were not allowed to cancel their membership contracts, were pressured into buying the membership, or did not receive benefits that justified the cost of the membership. Nearly 49,000 class members filed claims to participate in the settlement. Another 83,380 will receive benefits without having to file a claim because they are defaulted DirectBuy Members whose late payment penalties are being waived. Epiq received 425 requests for exclusion from the

Settlement.

On September 10, 2013, I conducted a fairness hearing. None of the objectors appeared at the hearing. At the hearing, I requested the parties to supplement their submissions with additional information regarding DirectBuy's financial condition, and they have complied with that request.

## DISCUSSION

### A. Class Certification and Notice

As noted above, Judge Springmann preliminarily certified a Class for purposes of the Settlement consisting of all Current DirectBuy Members, all Former DirectBuy Members, and all Defaulted DirectBuy Members who did not elect to opt out. I find that the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) are satisfied, and certify a Class for purposes of approving the Settlement Agreement.

Rule 23 requires that the Class Members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Reasonable notice is required to all class members who would be bound by a proposed settlement. Fed. R. Civ. P. 23(e)(1). The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class. *See* Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist & Plain Language Guide* 3 (2010) ("It is reasonable to reach between 70–95%. A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%.").

According to DirectBuy's records, the class contains 847,860 class members – 308,844

Current DirectBuy Members; 455,636 Former DirectBuy Members; and 83,380 Defaulted DirectBuy Members. The Class Period extends from October 11, 2002, through the preliminary approval date. Epiq's implementation of the notice plan, which is detailed in the Declaration of the Settlement Administrator [ECF No. 169-1] and the Updated Declaration of the Settlement Administrator [ECF No. 185-1], has resulted in actual individualized notice to around 99% of the Class. Given these near perfect delivery percentages, it is plain that due process and the notice requirements of Rule 23 have been satisfied.

**B.     Adequacy of the Settlement Agreement**

A district court must scrutinize and evaluate a class action settlement to determine whether it is "fair, reasonable, and adequate." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(e)(2)). In making these determinations, the court considers five factors: (1) the strength of plaintiffs' case compared to the defendants' offered settlement amount; (2) the likely complexity, length, and expense of the litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In most cases, a court cannot make an informed judgment about the fairness, reasonableness, and adequacy of a class without assessing the likelihood and value to the class of the case's possible outcomes, referred to as the net expected value of the litigation. *See Williams*, 658 F.3d at 634 (citing *Synfuel*, 463 F.3d at 653). A court must normally "weigh the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class' claims." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d

560, 578 (N.D. Ill. 2011). Although DirectBuy highlights the uncertainty surrounding the viability of obtaining class certification outside of a settlement, as well as other weaknesses in the merits of the Plaintiffs' claims, the parties do not present evidence that would allow the Court to quantify the value to the class of continued litigation. This omission of the total amount the Class could recover was intentional. As the parties see it, any discussion about the strength of the Plaintiffs' claims and, ultimately, about whether the settlement terms are fair, reasonable, or adequate, must be viewed in light of one crucial overriding factor: DirectBuy's severely leveraged financial position. They contend that DirectBuy's compromised financial condition dictates the total amount the class could hope to recover, regardless of other existing strengths or weaknesses. I agree. Having considered the record in its entirety, further litigation may well be pointless given DirectBuy's dire financial situation.

But in looking closely at the factors that I need to consider, it's worth mentioning at the outset that this case does not present "suspicious circumstances." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002). In *Reynolds*, the history of the parties' settlement negotiations suggested that the parties may have colluded and performed a "reverse auction"—where the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant. *Id.* at 282. The *Reynolds* court was particularly concerned because the settlement would have extinguished a similar pending lawsuit that appeared promising without providing the class with consideration for releasing the claims involved in that suit. *Id.* at 283–84. In such a case, the district court must perform a more searching inquiry into the fairness of the settlement. *Id.* at 284.

There is nothing suspicious at play here. In response to the settlement that was presented to the Connecticut court for approval in the *Wilson* litigation, Class Counsel filed a series of objections opposing the settlement on grounds that it was inadequate. After the court rejected the *Wilson* settlement, Class Counsel ensured that settlement discussions going forward involved as many representative Plaintiffs and counsel who were willing to participate. This is not a situation where DirectBuy chose to settle with particular parties and attorneys in the hope of extinguishing cases filed by superior lawyers. Moreover, the Settlement Agreement does not extinguish any other suits without providing the class with consideration. For example, the *Wilson* plaintiffs have now opted out of the Settlement Agreement and will be pursuing their individual claims against DirectBuy.

Negotiations were hard fought, not collusive, in this case. Class Counsel assured the Court at the fairness hearing that settlement was the result of extensive negotiations with adversaries who had established they could vigorously defend the action, and who were adamantly opposed to any cash settlement. An agreement was reached only after extensive arm's length negotiations during three days of in-person formal mediation with Judge Neville and additional negotiations thereafter. Judge Neville participated in and exchanged hundreds of emails and phone calls with the parties to negotiate a settlement over a two-month period. Attorney Eagle's expertise in finance allowed him to confirm the Defendants' critical financial position, and the near certainty that the Plaintiffs would see no cash even if they were awarded damages after successfully litigating the merits. In particular, during the time of the negotiations, DirectBuy was in default on $335 million in senior secured debt. In November 2012, DirectBuy completed restructuring of that indebtedness, whereby the senior bondholder received 100% of

the equity of the company, and $100 million in other secured notes. Even after restructuring, DirectBuy has substantial secured indebtedness that exceeds the value of its tangible assets.

Although $20 (the expected pro rata award of the net settlement fund for each class member who filed a claim notice) is not significant in a vacuum, "a dollar today is worth a great deal more than a dollar ten years from now," *Reynolds*, 288 F.3d at 284, and a major benefit of the settlement is that class members will obtain these benefits much more quickly than had the parties not settled. The parties have informed the Court that this case, were it to proceed, would face numerous challenges such that, even if the case reached trial, the class members would not receive benefits for many years, if they received any at all. Faced with the prospect of receiving no recovery – both because DirectBuy might have succeeded in any aspect of what would have been a vigorous defense absent settlement and because DirectBuy had no unencumbered assets – Class Counsel is confident that payment of up to $20.00 per household is an excellent result in this litigation. The parties assert that because the only amount the Plaintiffs could hope to recover after an award of damages is zero, a settlement involving any cash should be considered adequate.

Under these difficult circumstances, I find that it is appropriate to place significant weight on the opinion of counsel in concluding that the Settlement is reasonable in light of the value of further litigation. In addition to the benefits that can be measured in dollars ($1.9 million in a settlement fund to be distributed pro rata, $360,000 in administrative costs associated with providing notice, forgiveness of over $3 million worth of late payment penalty fees), the Defendants have also agreed to include a three-day right of cancellation in all future membership agreements, which will positively impact consumers across multiple states. Several

factors show that this is a significant and valuable benefit. First, it is meaningful when considered against the backdrop of DirectBuy's financial position, which limited the ways in which counsel could successfully add value to the Class Members and promote the interests of the public. Second, comments by several of the objectors suggest that it is a term they would have valued, and is thus a benefit that future members will value. The fact that various states have legislation requiring a right of cancellation in consumer contracts and purchases also demonstrates its import on a larger scale. The interests of the public as a whole in a consumers' rights action is a consideration of the broader implication of a class action settlement, *see Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998), and this particular benefit could not have been obtained absent a settlement because the Plaintiffs have not alleged that DirectBuy's current cancellation practices are illegal. Finally, although the benefit to the Class Members is not direct, the provision will generate good will for DirectBuy and enhance their public image. This, in turn, is beneficial to all members of the more than 100 DirectBuy clubs in the United States and Canada who can only continue to receive the benefits of their memberships if the franchises stay in operation.

      The terms of the Settlement include real out-of-pocket payments, not just compensation in kind. *Cf. In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) (viewing with suspicion the adequacy of a settlement where everyone other than the plaintiffs had been paid in cash). In addition, DirectBuy has offered a significant benefit that impacts the interests of the public as a whole, and has agreed to forego the collection of up to $3 million of late fees and charges despite their precarious financial position. I find that balancing these benefits against the

value of further litigation weighs in favor of accepting the Settlement.

A brief analysis of the remaining factors shows that they also support approval of the Settlement as fair, reasonable, and adequate. First, the complexity, length, and expense of continued litigation, *Synfuel*, 463 F.3d at 653, strongly favors settlement. By approving the Settlement Agreement, the present lawsuit will come to an end and class members will realize benefits. By contrast, denying approval will lead to protracted litigation, with no end in sight. Discovery would be needed touching on both the merits of the claims and the propriety of class certification. The nature of the claims would require massive discovery. As the Defendants note, the class period spans over ten years, and the allegations regarding pricing implicate millions of products over that time span, including products offered by third party retailers. In sum, "it would be a monumental undertaking for Plaintiffs to attempt to create any reliable comparison between DirectBuy pricing and that of countless retailers on millions of products going over the past ten-year period." (Br. in Resp. 23, ECF No. 183.) Even after obtaining the data, experts would be needed to review and analyze it. Similar scenarios exist for the Plaintiffs' other claims. Obtaining any result in this litigation—good or bad—would be years away if the litigation were to continue, which weighs in favor of approving the Settlement Agreement.

Second, the limited opposition to the Settlement Agreement among affected parties, *Synfuel*, 463 F.3d at 653, also favors settlement. The participation rate is 100 times higher than the opt out and objection rate. None of the objectors attended the fairness hearing. Additionally, and perhaps more significantly, this case involves no opposition from regulatory agencies or consumer advocacy groups. DirectBuy provided proper notice of the Settlement Agreement to the appropriate state and federal officials pursuant to the Class Action Fairness Act of 2005

(CAFA), and the only comments they received were to request that the final judgment be amended to facilitate the ability of defaulted class members to defend collection actions that might be brought against them in the future. DirectBuy agreed to this request. In comparison, the rejected settlement in the *Wilson* litigation prompted the attorney generals from the majority of states across the country to join together in opposition to "forcefully argue that the settlement [was] both overstated and undervalued." *Wilson*, 2011 WL 2050537, at *9. "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV–08–1365–CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010).

Third, as the Court has already noted, the "opinion of competent counsel" supports a determination that the settlement is fair, reasonable, and adequate under Rule 23. *Synfuel*, 463 F.3d at 653. Class Counsel has extensive experience in consumer class actions and complex litigation, and there is no indication that the Settlement Agreement is the result of collusion. Class Counsel reasonably concluded that one of the most significant factors in negotiating a fair and adequate settlement for the Class was the financial condition of DirectBuy. *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (stating that the Defendant's leveraged financial condition was the "one factor" that "predominate[d] to make clear that the district court acted within its discretion" in the balancing of factors to determine if a settlement was fair, adequate, and reasonable); *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 316 (D. Md. 1979) (including the solvency of the defendant and the likelihood of

recovery on a litigated judgment as one of the factors to weigh against the amount tendered to the plaintiffs to determine if the proposed settlement was adequate).

The financial condition of the defendant in class action settlement is a legitimate—if not entirely pragmatic—consideration, as the Eighth Circuit has held. *See In re Wireless Tele. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005) (the financial condition of the defendant is one of the factors that a court must consider in determining whether a settlement is fair, reasonable, and adequate). Other courts have referred to this as the defendant's ability "to withstand a greater judgment." *See City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *overruled on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Put simply, faced with the prospect of a bankrupt judgment debtor down the road, I cannot say that Class Counsel did not follow a reasonable course in this litigation and ultimately achieve a fair and adequate settlement.

The final consideration, "the stage of the proceedings and the amount of discovery completed at the time of settlement" *Synfuel*, 463 F.3d at 653, is a relevant factor because it determines "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims," *Armstrong*, 616 F.2d at 325. The parties concede that pre-settlement discovery was limited to the Defendants' audited financial statements and other matters directly related to DirectBuy's financial position. However, they urge that it was this discovery that permitted them to make an accurate assessment of the likelihood of realizing any recovery, even if the Plaintiffs were to prevail on the merits of their claims. I find that discovery was sufficient for effective representation, and that formal discovery would have only taken more time and resulted in the expenditure of additional funds on both sides without achieving a more attractive settlement or

any other appreciable benefit. The recognition by the Eight Circuit that "[t]he parties to a class action are not required to incur immense expense before settling as a means to justify that settlement," *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995), rings particularly true under these circumstances. Counsel's decision to forgo additional discovery upon learning of DirectBuy's worsened financial condition, in the hopes of minimizing costs and achieving a quick recovery, was fair and reasonable.

None of the objectors who complain about the recovery being too low address the factors that this Court must consider when determining the adequacy of a settlement. It must be remembered that the "essence of a settlement is compromise." *Armstrong*, 616 F.2d at 315. A settlement will not be rejected solely because it does not provide a complete victory to the plaintiffs. *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Additionally, many of the issues the objectors raised go to the merits of the claims and are essentially the same issues raised in the pleadings. Unsurprisingly, in light of their pro se status, the objectors do not focus—as this Court must—on the principles governing approval of class action settlements.

For the reasons set forth above, the Court finds that the Settlement is fair, reasonable, and adequate. The Court approves the pro rata distribution of the Net Settlement Cash Fund by check, mailed directly to each Class Member who is entitled to payment, with costs of distribution to be paid by DirectBuy.

## C.     Attorneys' Fees and Incentive Awards

The Plaintiffs submit that an award of $900,000 is fair and reasonable in light of the benefits provided to Class Members under the Settlement; the litigation efforts of Class Counsel to date; compensation levels in the relevant market for such legal services; and the substantial

risk of nonpayment at the time Class Counsel undertook the representation of Plaintiffs in this litigation.

In deciding an appropriate fee in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) (finding that in common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case").

Relying on *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (finding it reasonable to award fees based on the total value of the settlement, which included the forgiveness of debt for students who were delinquent in paying back their loans) and *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *16 (S.D.N.Y. 2002) (awarding fees of 28% of the total settlement consideration, which included credit notes class members could use to reduce debt owed to defendants), Class Counsel submits that the Total Settlement Value in this case should include the $3 million in charged and unpaid late fees that were incurred by defaulted members and which the Defendants agree not to collect. An award of attorneys' fees in the amount of $900,000 represents less than 20% of the Total Settlement Value. Class Counsel also notes that payment of 33% of the common fund is widely accepted by the Seventh Circuit as a reasonable fee in a class action. *See Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25 percent as a benchmark figure for a

contingent-fee award in a class action"); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1033 (N.D. Ill. 2000) (recognizing "the established 30% benchmark for an award of fees in class actions."); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1251–52 (N.D. Ill. 1993) (awarding 29% of a common fund); *Meyenburg v. Exxon Mobil Corp.*, No. 3:05–cv–15–DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation"); *Teamsters Local Union No. 604 v. Inter–Rail Transp., Inc.*, No. 02–CV–1109–DRH, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third percent (33 1/3%) in a class action i[s] not uncommon").

Class Counsel assumed a substantial risk of non-payment given the complexity of the action and DirectBuy's position that it stood ready at all times to vigorously defend the lawsuit. In light of the significant likelihood that Class Counsel could have ultimately recovered nothing, Class Counsel had every incentive to litigate this matter in the most efficient manner possible. Class Counsel has also submitted an affidavit stating that the recovery is below the fees and expenses they actually incurred, and they have sufficiently outlined the efforts undertaken in this multi-jurisdictional litigation. The Court therefore approves the request for $900,000 for Class Counsel's fees.

Finally, Class Counsel requests that the Court award each class representative an incentive award of $500 from the common fund. Because there are 34 class representatives, the total cost of the requested award is $17,000. "Incentive awards are justified when necessary to induce individuals to become named representatives." *Synthroid*, 264 F.3d at 722; *see also Cook v. Niedart*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Incentive payments of $500 for each class representative are appropriate. First, class representatives knew that this litigation would be long and complex and that they might be subject to depositions and cross examination at trial. Even if they were successful after such protracted litigation, the award was not likely to include significant monetary benefit. In addition, $500 is below the average incentive payment awarded to class representatives in other consumer class actions, *see* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L.Rev. 1303, 1333 (2006), which suggests that $1,000 is the market rate for incentive reimbursements. Finally, the $17,000 total award is only a small percentage of the Class's overall recovery. The incentive payments are therefore approved.

## CONCLUSION

For the reasons set forth above, the Plaintiffs' Motion for Final Approval of Class Action Settlement Agreement, Approval of Distribution of Net Cash Settlement Fund, Award of Attorneys' Fees, and Award of Class Representatives' Incentive Fee [ECF No. 171] is **GRANTED**. A Final Judgment will be issued consistent with this Opinion and Order and with the Settlement Agreement.

SO ORDERED on October 24, 2013.

      s/ Philip P. Simon
PHILIP P. SIMON
UNITED STATES DISTRICT COURT